UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOHN M. JOHNSON,

    Plaintiff,

v.                                              Case No. 14-C-1616

RON D. CRAMER,

    Defendant.

## DECISION AND ORDER

John M. Johnson, who is representing himself, filed this lawsuit pursuant to 42 U.S.C. § 1983. I allowed him to proceed on a claim against Ron D. Cramer in his official capacity as the Eau Claire County Sheriff. Official capacity claims against municipal officials are, in effect, claims against the municipal body itself. *Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008). As such, to avoid confusion, unless I am discussing actions performed specifically by Cramer, I will reference plaintiff's claim as being against Eau Claire County (the "County") rather than against Cramer.

Plaintiff claims that the County approved of Correctional Healthcare Companies, Inc. ("CHC"), providing inadequate medical care to prisoners. Defendant filed a motion for summary judgment on January 21, 2016. He argues that he is entitled to summary judgment because plaintiff "cannot substantiate that [the] County had any unconstitutional policy, practice or procedure in place with respect to medical treatment." (Docket #36 at 1.) For the reasons discussed in this decision, I grant defendant's motion and dismiss this case.

## I. RELEVANT FACTS[1]

Cramer has been the elected sheriff of the Eau Claire County Sheriff's Department since 1996. Plaintiff has been incarcerated at the Jail for various periods from February 5, 2013, to July 14, 2014.

Since 2010, inmate medical and mental health services at the Jail have been provided pursuant to a contract between the County and Health Professionals, Ltd., which later became CHC. The 2013 and 2014 contracts between the County and CHC included the services for an on-call nurse or physician twenty-four hours per day, seven days per week, and on-site medical care and evaluation by a physician for one hour per week. The 2013 contract also provided for nursing services and mental health services including a registered nurse for twenty-four hours per week, a licensed practical nurse for thirty-four hours per week, a health care unit administrator for forty hours per week, a Masters-level social worker for five hours per week, a Bachelors-level social worker for twenty hours per week, and a nurse practitioner for five hours per week. In 2014, in addition to the nursing and health care administrator services provided in 2013, the County increased its mental health services to forty hours per week.

The County has established policies and procedures relating to medical care, including procedures regarding inmate access to medical treatment. At the time of booking, inmates are informed of the procedure to access medical care. Inmates have access to the rule book via the TurnKey Corrections Kiosk and must acknowledge that

---

[1] Facts are taken from "Ron D. Cramer's Proposed Findings of Fact in in [sic] Support of his Motion for Summary Judgment Pursuant to Fed. R. Civ. Proc. [sic] 56" (Docket #35) and from "Plaintiffs [sic] response to Ron D. Cramers [sic] motion for Summary Judgment and findings of fact pursuant to Fed. R. Civ. Proc. [sic] 56" (Docket #43). The facts are undisputed unless otherwise noted.

2

they read it before they are able to access the kiosk for other purposes such as canteen, messages, etc. Plaintiff agrees that policies and procedures exist; however, he notes that they are inadequate. He also states that inmates are initially held in holding cells, during which time they have no access to the kiosk.

In 2013 and 2014, if an inmate was in need of non-emergency care, that inmate would fill out an inmate medical request form, which would then be evaluated by the CHC nursing staff. CHC nurses and/or the physician would determine what course of action was necessary, including whether the inmate should be examined by a nurse or physician. Jail staff were involved in the evaluation of medical care requests only in emergency situations that required immediate medical attention.

As Sheriff, Cramer is aware of the overall operations of the Jail, but he is not intimately involved in its day-to-day operations. Cramer generally does not review or approve medical requests, nor does he respond to or investigate all complaints about medical care. According to Cramer, he never reviewed or responded to any requests for medical treatment submitted by plaintiff. Cramer also denies personally participating in any decision as to plaintiff's medical care, including which treatment or medications he should receive. Cramer states that his contact with plaintiff was limited to responding to a few appeals plaintiff filed regarding various issues. Cramer explains that, when deciding an appeal, he generally conducts an investigation, which may include a review of records and/or discussion with relevant personnel. Based on his investigation of plaintiff's complaints, he understood that plaintiff was being seen and evaluated by medical personnel on a regular basis, his medications were being reviewed and

3

evaluated on a regular basis, and he was not being denied any medically necessary examinations or surgeries.

Cramer states that he was not aware of any prior specific instances that demonstrated that correctional officers were not allowing inmates to access medical care. In addition, he states that he was never aware of, nor did he approve of, any policy, practice, or procedure that condoned inadequate medical care being provided to inmates.

Cramer also states that, after the County contracted with CHC for medical services, officials consistently tried to evaluate and improve the medical and mental health services offered to inmates. On a weekly basis, Jail medical staff, mental health staff, and supervisory or administration staff would meet to discuss the overall health care services within the jail. These discussion would include the overall health care system, specific issues that arose, and improvements that should be made. Plaintiff agrees that these meetings occurred, but he states that no changes were ever made.

## II.  DISCUSSION

**A. Summary Judgment Standard**

Summary judgment is required where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, I take the evidence in the light most favorable to the non-moving party and may grant the motion only if no reasonable juror could find for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986).

**B. *Monell* Claim**

Section 1983 provides that "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights . . . secured by the Constitution . . . shall be liable to the party injured." Here, for the County to be liable, plaintiff must show (1) that he was deprived an underlying substantive right (adequate medical care) and (2) that the deprivation was caused by the County's policy or custom. Claims, such as this one, against a municipality are often called *Monell* claims, in reference to the U.S. Supreme Court case discussing such claims. *See Monell v. NY.C. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). The purpose of a *Monell* claim is to distinguish acts of the municipality from acts of employees of the municipality because "[m]isbehaving employees are responsible for their own conduct." *Estate of Sims ex rel. Sims v. Cty. of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007).

To prove a *Monell* claim against a municipality, a plaintiff must first establish that he has suffered a deprivation of a constitutional right. *See* 42 U.S.C. § 1983. Second, a plaintiff must establish that an official policy or custom exists. *Estate of Sims ex rel. Sims*, 506 F.3d at 514. Third, a plaintiff must establish causation by connecting the policy or custom to the constitutional deprivation and showing that the former was the "moving force" behind the latter. *Id.*

Failure to establish any of the three prongs will be fatal to a plaintiff's claim. Defendant focuses his argument on plaintiff's failure to satisfy the second prong: that an official policy or custom existed. There are three ways for a plaintiff to establish the existence of a policy or custom. A plaintiff can provide evidence of: "(1) an express

5

policy, (2) a widespread practice which, although unwritten, is so entrenched and well-known as to carry the force of policy, or (3) [. . .] the actions of an individual who possesses the authority to make final policy decisions on behalf of the municipality or corporation." *Rice ex rel. Rice Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012).

No explanation is need for the express-policy and individual-action routes; those are self-explanatory. If a plaintiff attempts to establish the existence of a policy or custom with evidence of a widespread practice, a plaintiff must show that the relevant official (here, Cramer) was "deliberately indifferent to the known or obvious consequences" of the alleged widespread practice. *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2009) (quotations omitted). A plaintiff must show that the official knew of the practice or that it was so pervasive that he must have known. *See Phelan v. Cook Cty.*, 463 F.3d 773, 790 (7th Cir. 2006).

**C. Application of the Law to the Facts**

Plaintiff argues that defendant's motion for summary judgment should be denied because the Jail had a widespread practice or custom of failing to require that CHC provide adequate medical and mental health care to inmates. Defendant argues that plaintiff provides no evidence to support his claim of such a widespread practice or custom and therefore defendant is entitled to summary judgment.

As explained above, for plaintiff's claim to survive summary judgment, he needed to show that a genuine question of material fact existed over whether the County had a policy or custom that condoned CHC providing inadequate medical treatment to Jail inmates. He could have done so in one of three ways.

6

First, he could have provided evidence of an express policy; he did not. In fact, the undisputed facts show that the Jail had written policies explaining the procedure by which inmates could obtain medical care. Other policies allowed for inmates to raise their concerns or complaints about the timeliness or quality of the medical care. And, contracts between the Jail and CHC (which were revised according to the Jail's needs) set forth the services that CHC would provide. Plaintiff does not dispute that any of these policies or procedures existed, nor does he identify other policies that support his claim that defendant condoned CHC providing inadequate treatment to inmates.

Second, plaintiff could have provided evidence of a widespread practice which, although unwritten, was so entrenched and well-known that it carried the force of policy. Plaintiff makes no attempt to support his allegations that "adequate medical care was being denied constantly by Eau Claire County Jail staff." (Docket #46 at 3.) He offers no evidence in support of his allegations that his own medical needs were unaddressed, and he makes no attempt to show that the medical staff failed to adequately treat anyone other than him. "[T]here is no clear consensus as to how frequently [certain] conduct must occur to impose *Monell* liability [under the custom and practice theory], except that it must be more than one instance, or even three." *Thomas v. Cook Cty. Sheriff's Dep't,* 604 F.3d 293, 303 (7th Cir. 2009). Plaintiff has not supported even one such instance.

Finally, plaintiff could have provided evidence of specific actions of an official with policy-making authority. Plaintiff does not identify an official with policy-making authority, let alone show specific actions by such a person that support his claim. Assuming that plaintiff believed Cramer to be the official with policy-making authority, plaintiff makes

7

only broad, conclusory allegations about Cramer's conduct. Cramer, on the other hand, explains, under the penalty of perjury, that his interaction with plaintiff was limited to responding to two appeals, which he investigated and ultimately determined were meritless because the medical care being provided to plaintiff was appropriate. Cramer also stated that he was never aware of any policy, practice, or procedure of inadequate care being provided, and, while there were periodic complaints filed by inmates, there was no suggestion that CHC was ignoring the Jail's policies regarding medical care or disregarding their contractual obligations. Plaintiff makes no efforts to dispute these statements.

In short, summary judgment "is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) (quoting *Schacht v. Wis. Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999). Plaintiff offers no evidence to support the allegations in his complaint; he only repeats those allegations. While his allegations were sufficient to state a claim, they are not sufficient to survive summary judgment. Plaintiff blames his failure to provide evidence, in part, on the fact that he received only minimal discovery from defendant; however, if plaintiff believed defendant's responses were insufficient, he should have brought that to my attention before discovery closed. In addition, plaintiff promises that testimony at trial will prove his claim, but, because plaintiff has not established that there is a genuine dispute as to any material fact, no trial is warranted in this case.

In my July 2015 screening order, I explained to plaintiff that his claims regarding the medical treatment he received at the Jail implicated his Eighth Amendment rights,

8

but that he did not name any individual who was personally involved in his medical care. (Docket #20 at 5.) I gave plaintiff the opportunity to file a motion to amend his complaint to state claims against the individuals who were personally involved in his medical care. Plaintiff declined to do so, opting instead to pursue only a *Monell* claim. However, for the reasons explained in this decision, plaintiff has failed to carry his burden with regard to such a claim, so I must dismiss his lawsuit.

### III.  CONCLUSION

For the reasons stated, **IT IS ORDERED** that defendant's motion for summary judgment (Docket #34) is **GRANTED**. Judgment shall be entered accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment.  The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin, this 30th day of May, 2016.

                                s/ Lynn Adelman
                                _____
                                LYNN ADELMAN
                                District Judge

10

Case 2:14-cv-01616-LA    Filed 05/30/16    Page 10 of 10    Document 47